David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*SONYA PICKETT*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| SONYA PICKETT, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| QCHI f/k/a QC HOLDINGS, INC., | **COMPLAINT** |
| Defendant. | |

For this Complaint, the Plaintiff, SONYA PICKETT, by undersigned counsel, states as follows:

## **JURISDICTION**

1. This action arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone

without consent, thereby violating the TCPA.

2.This action also arises out of Defendant's violations of Nevada Revised Statutes Chapter 604A.010 *et seq.* ("NRS 604A"), and the harassment of Plaintiff by Defendant and its agents in their illegal efforts to collect a high-interest loan as defined under this Chapter.

3.Plaintiff alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

4.Defendant has through its conduct in collecting a loan governed by NRS 604A violated NRS 604A.415 (replaced in revision by NRS 604A.5014, 604A.5041 and 604A.5068) (hereinafter "NRS 604A.415").

5.Defendant QCHI F/K/A QC HOLDINGS, INC. is a "licensee" as that term is defined by NRS 604A.

6.NRS 604A.415 incorporates the Fair Debt Collection Practices Act (FDCPA), as amended, 15 U.S.C. §§ 1692a to 1692j, which applies herein "even if the licensee is not otherwise subject to the provisions of the [FDCPA]."

7.Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 and this Court has original jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740 (2012).

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) & (c), because Plaintiff resides within the District of Nevada, a substantial portion of the events or omissions giving rise to the claim occurred in this District, and Defendant regularly conducts business in this District.

## PARTIES

9. The Plaintiff, SONYA PICKETT ("Plaintiff" or "Mrs. Pickett"), is an adult individual residing in Las Vegas, Nevada.

10. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11. Defendant QCHI F/K/A QC HOLDINGS, INC. ("Defendant" or "QCHI") is doing business in the State of Nevada.

12. Defendant is and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

13. QCHI at all times acted by and through one or more of the Collectors.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

**A. The Debt**

14. Plaintiff allegedly incurred a financial obligation (the "Debt") to QCHI.

15. The Debt was a "high-interest loan" as defined by NRS 604A.0703.

16. NRS 604A.415 provides that:

> If a customer defaults on a loan, the licensee may collect the debt owed to the licensee only in a professional, fair and lawful manner. When collecting such a debt, the licensee must act in accordance with and must not violate sections 803 to 812, inclusive, of the federal Fair Debt Collection Practices Act, as amended, 15 U.S.C. §§ 1692a to 1692j, inclusive, even if the licensee is not otherwise subject to the provisions of that Act.

17. As such, a violation of the Fair Debt Collection Practices Act (FDCPA) a though j is also a violation of NRS 604A.415.

## B. **QCHI Engages in Harassment and Abusive Tactics**

## **FACTS**

18. Plaintiff was struggling to pay her high-interest loan to QCHI and contacted QCHI on several occasions to try to obtain more workable payment arrangements.

19. QCHI refused to provide any meaningful accommodation or relief from the Debt.

20. Plaintiff then defaulted on the Debt.

21. After default, QCHI placed numerous collections to Plaintiff – often multiple times per day – on an almost daily basis, which was annoying and harassing.

22. However, the annoyance that drove Plaintiff to bring this suit occurred on or about September 12, 2018, when QCHI illegally called Plaintiff's cell phone

at approximately *6:00 am in the morning*, waking her up. At that point Plaintiff demanded QCHI stop all collection calls, since she was being harassed and abused. However, QCHI continued its relentless collection campaign resulting in this suit.

## C. Plaintiff Suffered Actual Damages

23. Plaintiff has suffered and continues to suffer actual damages as a result of QCHI's unlawful conduct.

24. Further, Plaintiff alleges that Defendant's actions at all times herein were "willful."

25. As a direct consequence of Defendant's harassing phone calls, acts, practices and conduct, Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, and has otherwise been totally annoyed by Defendant's intrusive and illegal collection efforts. Plaintiff has also lost the use of personal and family time while enduring these frustrations.

26. Plaintiff has also contemplated filing bankruptcy as a result of Defendant's illegal conduct to stop harassing calls in the future.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

27. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

28. The TCPA regulates, among other things, the use of automated telephone dialing systems.

29. 47 U.S.C. § 227(a)(1) defines an automatic telephone dialing system ("ATDS") as equipment having the capacity –

> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

30. Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS or an artificial or prerecorded voice to a cellular phone without prior express consent by the person being called, unless the call is for emergency purposes.

31. Such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls.

32. Autodialed and prerecorded calls to a wireless number by a creditor, or on behalf of a creditor, are permitted only if the calls are made with the "prior express consent" of the called party.

33. A caller may not limit the manner in which revocation of prior express consent to call may occur and that the burden is on the caller to prove it obtained the necessary prior express consent.

34. Further, consumers (like Plaintiff) may revoke consent through any reasonable means.

35. Nothing in the language of the TCPA nor its legislative history supports the notion that Congress intended to override a consumer's common law right to revoke consent.

36. Indeed, some consumers may find unwanted intrusions by phone more offensive than home mailings because they can cost them money and because, for many, their phone is with them at almost all times (like Plaintiff).

37. Consumers have a right to revoke consent, using any reasonable method including orally as Plaintiff did here.

## ALLEGATIONS APPLICABLE TO ALL TCPA COUNTS

38. Within the four years prior to filing the instant complaint, Plaintiff received numerous calls from Defendant from the following phone number (among potentially others): (913) 234-5458.

39. Upon information and belief, Defendant employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

40. Defendant or its agent/s contacted Plaintiff on Plaintiff's cellular telephone number ending in "0010" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A). Specifically, there were slight pauses before each call connected.

41. On or about September 12, 2018, after Defendant called Plaintiff's cell phone at approximately 6:00 am in the morning, Plaintiff instructed Defendant or its agent(s) to not call Plaintiff's cell phone ever again thereby revoking consent, if any ever existed, to be contacted by Defendant via an ATDS.

42. However, Defendant continued placing calls to Plaintiff's cellular telephone, without consent, using an ATDS in violation of the TCPA dozens, if not 100's of times even after September 12, 2018.

43. Defendant's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

44. The telephone number at which Defendant contacted Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff also noted that when she answered Defendant's calls there would be "dead air" sometimes for several seconds, which indicated to her that an automated system was in use and her calls were being routed to a collection representative once the ATDS identified a live user when she answered the calls.

45. Defendant's calls to Plaintiff's cellular telephone were not for "emergency purposes."

46. The burden is on Defendant to demonstrate that it had prior express consent to call Plaintiff's cellular phone with an ATDS, which it did not have for calls placed to Plaintiff's cell phone after September 12, 2018.

47. Further, Plaintiff is unaware as to whether or how Defendant ever obtained consent to place calls to cell phone in the first instance using an ATDS and avers that potentially all calls placed to her by Defendant violated the TCPA.

48. Plaintiff suffered actual harm and loss, since the unwanted calls depleted Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm. While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from Defendant's unwanted phone calls to Plaintiff's cell phone.

49. Plaintiff also suffered from an invasion of a legally protected interest by placing calls to Plaintiff's personal phone line when Defendant had no right to do so, resulting in an invasion of Plaintiff's right to privacy. The TCPA protects consumers from this precise behavior.

50. Plaintiff has a common law right to privacy. *E.g.*, Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

51. Plaintiff was also personally affected, since Plaintiff felt Plaintiff's privacy had been invaded when Defendant placed calls to Plaintiff's phone line without any consent to do so.

52. The injury suffered by Plaintiff is concrete because Defendant's violations caused Plaintiff to suffer an invasion of privacy.

## **COUNT I**

### **Violations of the FDCPA**
### **(as incorporated through NRS 604A.415)**

53. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

54. Any violation of 15 U.S.C. §§ 1692a through j constitutes a violation of NRS 604A.415.

55. Defendant's conduct violated 15 U.S.C. § 1692d in that Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.

56. Defendant's conduct violated 15 U.S.C. § 1692d(5) in that Defendant caused Plaintiff's phone to ring repeatedly or engaged Plaintiff in repeated conversations in connection with the collection of a debt.

57. Defendant's conduct violated 15 U.S.C. § 1692e(11) in that Defendant's communications with Plaintiff failed to include a "mini-Miranda" warning, "This is an attempt to collect a debt" and/or that the "communication is from a debt collector".  During the collection calls, QCHI did not make these required disclosures.

58. Defendant's conduct violated 15 U.S.C. § 1692f in that Defendant used unfair and unconscionable means to collect a debt and attempted to humiliate and belittle Plaintiff.

59. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA (and therefore also constitute violations of NRS 604A.415), including every one of the above-cited provisions.

60. Plaintiff is entitled to damages as a result of Defendant's violations.

61. Plaintiff has been required to retain the undersigned as counsel to protect Plaintiff's legal rights to prosecute this cause of action, and is therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## COUNT II

### Negligent Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq*.)

62. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

63. Defendant negligently placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

64. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

65. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

66. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

### Knowing and/or Willful Violations of the Telephone Consumer Protection Act, (47 U.S.C. § 227, *et seq.*)

67. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

68. Defendant knowingly and/or willfully placed multiple automated calls to cellular numbers belonging to Plaintiff without Plaintiff's prior express consent.

69. Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

70. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

71. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant awarding Plaintiff:

1. for consequential damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

2. for statutory damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

3. for an award of actual damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

4. for an award of punitive damages pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

5. for an award of costs of litigation and reasonable attorney's fees pursuant to NRS 604A.930 against each and every Defendant for Plaintiff;

6. "void" the Debt, bar Defendant from collecting thereon, and compel Defendant to turnover any principal, interest or other charges or fees collected on the Debt pursuant to NRS 604A.900(1).

7. Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

8. Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

9. Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

10. any other legal or equitable relief that the court deems appropriate.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 29, 2018

Respectfully submitted,

By /s/ David H. Krieger, Esq.
_____

David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, Suite 350
Henderson, Nevada 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Attorney for Plaintiff
*SONYA PICKETT*